IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRACY NEIL HAMBLEN )  )  Plaintiff, )  vs. ) )  CAROLYN W. COLVIN, ACTING )  COMMISSIONER OF THE SOCIAL )  SECURITY ADMINISTRATION, ) )  Defendant. ) | No. 3:12-CV-2009-BH Consent Case |

## MEMORANDUM OPINION AND ORDER

By order filed September 11, 2012, this matter has been transferred for the conduct of all further proceedings. Before the Court is *Plaintiff's Application for Attorney's Fees Under the Equal Access to Justice Act and Memorandum in Support Thereof*, filed December 10, 2013 (doc. 27.) Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED, in part.**

### I.  BACKGROUND

On June 25, 2012, Tracy Neil Hamblen (Plaintiff), through counsel, filed a complaint seeking reversal and remand of the Commissioner's decision denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act. (doc. 1.) On September 12, 2013, the Court entered judgment, reversing and remanding the case for further proceedings. (doc. 24.) Plaintiff then moved for an award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. (doc. 27.)[1] The Commissioner objected to the amount of fees sought. (doc. 30.) The motion is now ripe for determination.

---

[1] Plaintiff first moved for attorney's fees on December 9, 2013 (doc. 25), and filed a "corrected" motion for attorney's fees on December 10, 2013 (doc. 27).

## II. ANALYSIS

Under EAJA, the Court must award attorney's fees and expenses if (1) the claimant is the "prevailing party";[2] (2) the Government's position was not "substantially justified"; and (3) there are no special circumstances that make an award unjust. *Murkeldove v. Astrue*, 635 F.3d 784, 790 (5th Cir. 2011) (citing 28 U.S.C. § 2412(d)(1)(A)). The attorney's fees awarded under the EAJA must be reasonable, however. *See* 28 U.S.C. § 2412(b). "In determining the reasonableness of such fees, [the Fifth Circuit] has adopted the 12-factor 'lodestar' test enunciated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)."[3] *Sanders v. Barnhart*, No. 04-10600, 2005 WL 2285403, at *2 (5th Cir. Sept. 19, 2005) (per curiam). The claimant has the burden of demonstrating that the hours claimed were reasonably expended on the prevailing claim. *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990).

Here, as the prevailing party, Plaintiff has requested a total of $12,391.53 in attorney's fees based on 57.2 hours of attorney work for litigating his appeal in federal court and 9.5 hours of attorney work for defending his EAJA application at an hourly rate of $185.78. (docs. 27 at 3, 7;

---

[2] To be the "prevailing party" for purposes of the EAJA, a social security claimant must obtain a "sentence four" judgment reversing denial of disability benefits and requiring further proceedings before the agency. *Shalala v. Schaefer*, 509 U.S. 292, 300–302 (1993); *Goin v. Colvin*, No. 3:12-CV-2471-B, 2013 WL 1797862, at *2 (N.D. Tex. Apr. 29, 2013).

[3] The "lodestar fee" is the product of "the number of hours reasonably expended on the litigation" multiplied "by a reasonable hourly rate." *Sandoval v. Apfel*, 86 F. Supp. 2d 601, 615–16 (N.D. Tex. 2000) (Fitzwater, C.J.). "The court must then determine whether the lodestar amount should be adjusted upward or downward" using the *Johnson* factors. *Id.* These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. "[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted). Accordingly, the court need not examine each factor "if it is apparent that the court has arrived at a just compensation based upon appropriate standards." *Sanders*, 2005 WL 2285403, at *2 (citation omitted).

31 at 11–12.) Counsel has submitted itemized billing statements detailing the time that was devoted to the case. (docs. 27-2; 31-2.)[4]

The Commissioner objects to the hourly rate that Plaintiff seeks, as well as to the number of hours for which he requests compensation. (D. Br. at 1–6.)

**A.     Hourly Rate**

Plaintiff requests that the $125 hourly rate under the EAJA be adjusted using the average consumer price index for "all urban consumers" (CPI-U or national CPI). (Pl. Br. at 2.) According to his calculations, using the CPI-U results in an hourly rate of $185.78, which he claims "is quite significantly below [counsel's] actual market rate." (*Id.* at 3.)[5] Citing recent cases from this district, the Commissioner argues that the applicable CPI is that of the Dallas-Fort Worth area (DFW or local CPI),[6] and that the proper hourly rates are therefore $178.64 for work completed in 2012, and $181.44 for work completed in 2013. (D. Br. at 2.)

*1.     Statutory Cap*

The EAJA provides that "[t]he amount of fees awarded . . . shall be based upon prevailing

---

[4] The EAJA requires the applicant to submit "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C.A. § 2412(d)(1)(B) (West 2011). Counsel explains that the total hours charged for litigating Plaintiff's appeal in federal court (57.2) is "about 15% less than the 65.6 hours actually" spent on the case. (docs. 27 at 3; 27-2 at 5.) He states that the difference represents a "voluntary reduction" based on his "billing judgment" in accordance with *Hensley*. (doc. 27-2 at 5.)

[5] The CPI, as furnished by the U.S. Department of Labor's Bureau of Labor Statistics, has been used to determine the appropriate amount for cost of living increases pursuant to EAJA. *Cavazos v. Astrue*, No. CA C-09-361, 2011 WL 1004941, at *4 (S.D. Tex. Mar. 1, 2011), *rec. adopted*, 2011 WL 977519 (S.D. Tex. Mar. 16, 2011) (citing *Bode v. United States*, 919 F.2d 1044, 1053 n. 8 (5th Cir. 1990) (per curiam)). The average CPI-U for March 1996, the month the EAJA was amended to set the hourly rate for attorney's fees at $125, was $155.70. The CPI-U was $231.407 for September 2012, "the month in which counsel commenced work on Plaintiff's opening brief." (docs. 27 at 3; 27-1 at 2.). Counsel calculated the hourly rate of $185.78 by multiplying the statutory base of $125 by the CPI percentage increase since March 1996 (48.63 percent).

[6] In the Dallas-Fort Worth area, the average CPI was $212.227 for the year 2012 and $215.55 for the first half of 2013. (doc. 30-2 at 1.) Multiplying $125 by the CPI percentage increase since 1996 yields an hourly rate of $178.64 for work completed in 2012 and $181.44 for work completed in 2013. (doc. 30 at 3.)

market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.A. § 2412(d)(2)(A) (West 2011). The Supreme Court has construed the "cost-of-living" provision as part the statutory cap itself, which it has termed as the "[$125] cap (adjusted for inflation)" or "[$125] per hour (adjusted for inflation)." *Pierce v. Underwood*, 487 U.S. 552, 571–74 (1988). Based on the statutory language and Congressional intent, the Fifth Circuit has "likewise . . . recognize[d]" that the "cost-of-living" and the "special factor" exceptions constitute "two independent prongs for fee adjustment" under the EAJA. *Hall v. Shalala*, 50 F.3d 367, 369–70 (5th Cir. 1995) (citing *Baker v. Bowen*, 839 F.2d 1075, 1085 n.4 (5th Cir. 1988)).

Regarding the first prong, the Fifth Circuit has held that "[e]xcept in unusual circumstances," "if there is a significant difference in the cost of living since [the enactment of the EAJA] in a particular locale that would justify an increase in the fee, then an increase should be granted." *Baker*, 839 F.2d at 1084. The award need not track the cost-of-living index for that geographical area, but that index is a significant indicator. *Id.* The resulting figure is only a maximum rate, however, not a floor, and "a district court, in its discretion, may determine that a fee below the established ceiling is a reasonable attorney's fee award based on the facts of a particular case." *Hall*, 50 F.3d at 370. Ultimately, in order to satisfy the dual purposes of the EAJA "to ensure that there is sufficient representation for individuals who need it while minimizing the cost of attorneys' fees awards to the taxpayers," "rates should be increased only to the extent necessary to ensure [such] representation and should never exceed the percentage by which the market rate attorney's fees have

increased since the statute was enacted in 1981." *Baker*, 839 F.2d at 1082–84.

### 2. Uniformity

While the Fifth Circuit has made it clear that the $125 statutory rate should generally be adjusted for inflation, it has not specifically determined whether courts should apply the national, regional, or local CPI when calculating such an adjustment.[7] It has, however, provide guidance for courts in this circuit.

In *Baker*, five social security claimants successfully appealed the Commissioner's denial of benefits in federal court. *Baker*, 839 F.2d at 1079. "Each party then petitioned for attorney's fees under the EAJA. In each case, the district court awarded fees at the [then] statutory limit of $75 an hour, but refused to exercise discretion to award fees in excess of that amount." *Id.* In reviewing a "sampling of social security cases decided in the . . . Dallas Division" the previous year, the Fifth Circuit found that "[f]ee awards, based upon virtually identical factors and supporting affidavits ha[d] ranged from $75 to $125, depending not upon the relative merits of the claims, but simply upon the fact that judges ma[de] inconsistent rulings, and fail[ed] to take into account what other courts in the same division ha[d] done." *Id.* at 1083. The Court explained that "unlike determinations of other 'special factors,' the cost of living and the availability of attorneys are problems that affect each litigant within a district to the same degree." *Id.* Accordingly, it remanded

---

[7] Federal courts "confronting this issue have split on the question whether usage of national, regional[,] or local CPI[] charges is appropriate." *Quint v. Barnhart*, No. 05-135-B-W, 2006 WL 1495004, at *2–3 (D. Me. May 25, 2006). Some have concluded that the national CPI is most appropriate. *See id.*; *see also Jawad v. Barnhart*, 370 F. Supp. 2d 1077, 1085–89 (S.D. Cal. 2005). Others have found that the regional or local CPI (when available) best reflect the cost of living increase experienced by the applicant. *See, e.g.*, *Porter v. Astrue*, No. CV 11-2304 (JEB), 2013 WL 5978623, at *2 (D.D.C. Nov. 12, 2013) (noting that "most of the courts in [the D.C.] circuit use the regional CPI"); *Plump v. Colvin*, No. 2:12-CV-257, 2014 WL 523052, at *5 (N.D. Ind. Feb. 10, 2014) (holding that "the local consumer price index [was] the most accurate source of the cost of living in the market where the litigation occurred"); *Barrow v. Astrue*, No. 3:11CV00828-VLB-TPS, 2013 WL 2428992, at *1 (D. Conn. June 4, 2013) (same); *Killings v. Comm'r of Soc. Sec. Admin.*, No. 1:09CV845, 2009 WL 3614956, at *2 (N.D. Ohio Oct. 28, 2009) (same); *Knudsen v. Barnhart*, 360 F. Supp. 2d 963, 974 n. 6 (N.D. Iowa 2004) (same).

the five cases, holding "that a determination of the appropriateness of [EAJA fee award] increases should be uniform in the Dallas federal courts." *Id.* at 1079.

In subsequent cases, the Fifth Circuit has reiterated the importance of uniformity in calculating fee adjustments under the EAJA in courts serving the same judicial division or legal market. *See, e.g.*, *Hall*, 50 F.3d at 368 (stating that "the cost-of-living" and "availability-of-attorneys" factors "should be uniformly applied by the New Orleans district courts" and "invit[ing] the district judges of the Eastern District of Louisiana to address any lack of uniformity in the district and to address the issue with a view toward developing the required uniformity");[8] *Washington v. Barnhart*, 93 F. App'x 630, 631 (5th Cir. 2004) (per curiam) (instructing a court from the Southern District of Texas to "be cognizant of the need for uniformity in these types of cases" on remand). Uniformity is not required within a judicial district, however. The Fifth Circuit has expressly declined to "adopt [a] rule [that] requires uniform cost-of-living adjustments throughout *each district*," finding that "[a]lthough rate fluctuations among federal courts serving the *same city* are arbitrary, the same rate disparities between courts serving *two different markets* is more than reasonable; indeed, it is expressly contemplated by the Act itself." *Yoes v. Barnhart*, 467 F.3d 426, 427 (5th Cir. 2006) (per curiam) (emphasis added); *accord Lopez v. Astrue*, 236 F. App'x 106, 107 (5th Cir. 2007).

### 3.    *Recent Divisional Conflict*

After the Fifth Circuit remanded *Baker*, the Chief Judge for the Northern District of Texas entered an Agreed Order providing that "[u]pon request and proper proof" by a party who was entitled to attorney's fees "under the EAJA in a case involving a claim for disability benefits under

---

[8] That district only has one division. *See* http://www.laed.uscourts.gov/general/General.htm (last visited April 16, 2014).

Titles II and XVI of the Social Security Act," those fees would adjusted for a cost-of-living increase. *Baker v. Bowen*, No. 3:82–CV–0095–G, Agreed Order, at 2, ¶ 3 (N.D. Tex. Mar. 16, 1989) (see attached). The Agreed Order expressly provided that the "Dallas-Fort Worth" area CPI was "the most appropriate base index for computing the increased cost of living." *Id.* at 2, ¶ 1. The terms of the Order applied to "all EAJA applications in Social Security disability cases [then] pending in the Dallas Division, as well as [to] all future applications of this type, until such time as appropriate modifications [were] made by later order." *Id.* at 3, ¶ 5.

In the years immediately following the *Baker* Order, courts in the Dallas Division appear to have applied the DFW CPI when awarding attorney's fees in similar cases.[9] Between September 2008 and March 2013, courts in the Dallas Division also appear to have applied the DFW CPI.[10] The *Baker* Order does not appear to have been modified or repealed and remains in effect.

Recently, in *Goin v. Colvin*, No. 3:12-CV-2471-B, 2013 WL 1797862, at *5 (N.D. Tex. Apr. 29, 2013), the plaintiff (who was represented by the same attorney as in this case) argued that "the national rate [was] the more appropriate and consistent rate applied to" his attorney because he was "an interstate attorney and only a small percentage of his work occurr[ed] in Dallas." He also

---

[9] *See, e.g.*, *Miller v. Apfel*, No. CIV. A. 3:00-CV-0107-M, 2001 WL 1142763, at *3 (N.D. Tex. Sept. 26, 2001); *Sandoval*, 86 F. Supp. 2d at 614; *Paulick v. Apfel*, No. 3:99-CV-0945-X (N.D. Tex. Oct. 20, 1999) (agreed order); *Williams v. Apfel*, No. 3:98-CV-0386-G (N.D. Tex. Sept. 3, 1999); *Flores v. Apfel*, No. 3:98-CV-2714-T (N.D. Tex. June 30, 1999); *Taylor v. Apfel*, No. 3:98-CV-2752-P (N.D. Tex. June 9, 1999); *Horton v. Apfel*, No. 3:98-CV-1656-P (N.D. Tex. Mar. 24, 1999).

[10] *See, e.g.*, *Benton v. Astrue*, No. 3:12-CV-0874-D, 2013 WL 818758, at *1 (N.D. Tex. Mar. 5, 2013) (Fitzwater, C.J.); *Leroux v. Astrue*, No. 3:10-CV-2634-M, 2012 WL 6757772 (N.D. Tex. Oct. 26, 2012), *rec. adopted*, 2013 WL 28577 (N.D. Tex. Jan. 2, 2013); *Carr v. Astrue*, No. 3:10-CV-1474-BH, 2011 WL 5985292 (N.D. Tex. Nov. 28, 2011); *Charlton v. Astrue*, No. 3:10-CV-0056-O-BH, 2011 WL 6325905 (N.D. Tex. Nov. 22, 2011), *rec. adopted*, 2011 WL 6288029 (N.D. Tex. Dec. 14, 2011); *Bentley v. Astrue*, No. 3:10-CV-00032-L BF, 2011 WL 2923970 (N.D. Tex. June 15, 2011), *rec. adopted*, 2011 WL 2938223 (N.D. Tex. July 20, 2011); *Yearout v. Astrue*, No. 3:10-CV-0430-L-BH, 2011 WL 2988421 (N.D. Tex. Mar. 15, 2011), *rec. adopted*, 2011 WL 2990368 (N.D. Tex. July 22, 2011); *Hayes v. Astrue*, No. 3:09-CV-2018-G BK, 2010 WL 5479611 (N.D. Tex. Dec. 3, 2010), *rec. adopted*, 2011 WL 9049 (N.D. Tex. Jan. 3, 2011); *Hooker v. Astrue*, No. 3:08-CV-0445-B, 2010 WL 3719231 (N.D. Tex. Sept. 20, 2010); *Dounley v. Astrue*, No. 3:08-CV-1388-O, 2010 WL 637797 (N.D. Tex. Feb. 23, 2010); *Daniels v. Astrue*, No. 3:05-CV-1543-L, 2008 WL 4137982 (N.D. Tex. Sept. 2, 2008).

contended that the national CPI was more reliable than regional CPIs because these "are gathered less frequently, use smaller samples, and are more volatile than the national index." *Id.* The court agreed with the applicant and held that "[g]iven the government's concession that it and th[e] Court ha[d] accepted the national CPI rates in the past[,] and given [the attorney's] interstate and inter-regional practice[,] as well as concerns for consistency and reliability, . . . the national CPI" was the proper index to apply in that case. *Id.*

Subsequently, the court in *Taylor v. Colvin*, No. 3:12-CV-2750-P-BN, 2014 WL 696494, at *2–3 (N.D. Tex. Feb. 21, 2014) (also litigated by the same attorney as in this case), held that the national CPI was the proper index to apply in part because it found that the attorney's "interstate" practice constituted "the same unusual circumstances alleged in *Goin*," thereby warranting the application of the same CPI applied in *Goin*. *Id.*[11] Neither *Goin* nor *Taylor* addressed *Baker's* divisional uniformity requirement or the *Baker* Order's specification that the local CPI should apply in social security EAJA cases from this division.

### 4. *Applicable CPI*

Plaintiff essentially argues that *Goin* and *Taylor* are binding because his attorney is "the very same lawyer" who represented the claimants in those cases. (Pl. Reply at 2; Pl. Supp. Mem. at 1.) He also cites cases from other circuits holding that the CPI-U "provides the most accurate, uniform means to calculate the cost-of-living adjustment" under the EAJA. (Pl. Reply at 1–4.)

In *Baker*, the Fifth Circuit established a policy of maintaining fee-adjusting uniformity within a legal market or judicial division, and it has consistently reaffirmed that policy. In a post-*Baker* case, for example, a district court from the Abilene division of the Northern District of Texas denied

---

[11] The court also found that based on *Goin*, the Commissioner was "collaterally estopped" from asserting that the DFW CPI should apply against the attorney. *Taylor*, 2014 WL 696494, at *2–3.

-8-

the applicant's request to utilize the CPI-U and awarded him a lower hourly rate that it considered to be "reasonable and appropriate" in that division. *Lopez*, 236 F. App'x at 106–07. In his brief to the Fifth Circuit, the applicant argued that *Baker*'s uniformity requirement should be abolished because it did not "work well in practice." *See* Appellant Brief, 2007 WL 4049333, at *13–14. As in this case, he also claimed that the CPI-U was the proper index to apply because it was "more accurate and less statistically volatile" than the local or regional indices. *Id.* at *11–12. The Fifth Circuit held that the district court did not abuse its discretion by declining to apply the CPI-U, thereby implicitly declining the invitation to abolish *Baker*'s uniformity policy and to apply the national index in all EAJA cases in this circuit. *See Lopez*, 236 F. App'x at 107. Since most courts in this division have routinely applied the DFW CPI pursuant to the *Baker* Agreed Order, application of that index in this case will help maintain the required uniformity.

Second, utilizing a local or regional index in calculating EAJA fee awards best accounts for "the obvious fact that the cost of living, . . . is different in different places. If this were not the case, the Bureau of Labor Statistics would not publish multiple indices." *Barrow*, 2013 WL 2428992, at *1 (citing cases).[12] The Fifth Circuit has specifically noted, for example, that "San Angelo, when compared with Dallas,[13] enjoys an agreeably low cost of living." *Yoes*, 467 F.3d at 427. Use of the local or regional index is arguably the "fairer course" to take because it considers the "cost of living

---

[12] As the Fifth Circuit concluded, rate disparities between two different legal markets "is expressly contemplated by the Act itself." *Yoes*, 467 F.3d at 427. The EAJA requires, in relevant part, that attorney's fees be based upon "prevailing market rates" for comparable services. *See* 28 U.S.C.A. § 2412(d)(2)(A). In the context of a similar cost-shifting statute, the Supreme Court has defined "prevailing market rate" as the rate "prevailing *in the community* for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984) (interpreting 42 U.S.C. § 1988, which grants attorney's fees in civil rights cases) (emphasis added). It stands to reason that by specifying the "market rate" as the starting point in determining fees under the EAJA, Congress intended (or was aware) that these awards would vary depending, at least in part, on the prevailing rates in the "community" where the litigation occurred, and not be uniform across entire federal districts, let alone the entire nation.

[13] These cities are located in different divisions of the Northern District of Texas.

actually experienced by the applicant" and "avoids the pitfalls of using the national CPI", such as: "(1) depriving an attorney of the actual increase in the CPI where he works when that increase (if measured locally or at least regionally) is greater than the increase in the national CPI; [and] (2) creating a windfall [for the attorney] where the national CPI increase is greater than either the applicable local or regional CPI increase." *Porter*, 2013 WL 5978623, at *2 (citing *Mannino v. West*, 12 Vet. App. 242, 243 (1999)).

Third, in cases such as this where the national CPI is higher than the local CPI, applying the national CPI to "an interstate attorney" that happens to litigate some cases in Dallas while applying the local CPI to attorneys who practice exclusively in the Dallas market would arguably further the type of "arbitrary" EAJA awards that the Fifth Circuit discouraged in *Baker*. It would also allow the type of windfall contemplated in *Porter* and *Mannino* for interstate attorneys by awarding them higher fees for the exact same work and effort by local attorneys handling cases in the same legal market. As plaintiff's counsel explains, "[t]he internet and the ECF filing system now make it possible for lawyers having the necessary substantive-law experience to launch a disability appeal in Dallas, *just as easily* as in Chicago, Kansas City, St. Louis, Galveston, or Beaumont." (Pl. Reply at 3–4) (emphasis added). With the use of technology, local and out-of-state attorneys may both now litigate social security appeals in Dallas from the comfort of their officers, regardless of where that office is located.

In conclusion, the Court finds that using the DFW CPI in cases from this division, even though it is currently lower than the national CPI, will adequately serve the EAJA's dual purpose of ensuring legal representation for those Dallas residents who need it, by giving sufficient remuneration to all attorneys who provide that representation in this division, while minimizing the

cost to taxpayers. *See Baker*, 839 F.2d at 1083. Accordingly, the applicable hourly rates in this case are $178.64 for work completed in 2012 and $181.44 for work completed in 2013.

**B.    Reasonableness of the Hours Requested**

The Commissioner claims that 57.2 hours for litigating Plaintiff's case in federal court are "unreasonable" in light of the work done, and requests a reduction to 40 hours. (doc. 30 at 3.)

*1.    Work Performed on September 18, 2012*

The Commissioner first argues that the 7 hours requested to conduct "medical research" on September 18, 2012, are unreasonable because the Commissioner "should not have to pay for Plaintiff's attorney's education on any particular matter." (*Id.* at 4.)

Counsel spent the disputed 7 hours reviewing Plaintiff's medical and psychological records, researching medical terminology, reading the "hearing transcript," conducting legal research regarding the ALJ's failure to consider Plaintiff's bowel incontinence, and drafting a portion of two legal arguments. (*See* docs. 27-2 at 2; 31 at 9.) Because counsel did not represent Plaintiff during the administrative proceedings (*see* doc. 31 at 8; *see also* R. at 23), he could reasonably be expected to spend time reviewing Plaintiff's case, including the medical record and the ALJ's decision, to determine the appealable issues in the case. (*See* R. at 239–623.)[14]

It was reasonable for counsel to spend time researching Plaintiff's physical and mental impairments to present a well-informed and effective case. As one court has explained, "[t]o

---

[14] Courts have held that the time spent reviewing the record is separate and apart from the time spent drafting the corresponding sections of the brief. *See, e.g.*, *Barnes v. Astrue*, 3:11CV01780 HBF, 2013 WL 1296498, at *2 (D. Conn. Mar. 28, 2013); *McNeil v. Astrue*, No. CIVA H-07-3664, 2009 WL 1451707, at *3 (S.D. Tex. May 22, 2009). While counsel spent only a portion of the 7 hours reviewing the record, some courts have allowed much more than 7 hours to perform that task. *See, e.g.*, *Bentley v. Astrue*, No. 3:10-CV-00032-L BF, 2011 WL 2923970, at *2 (N.D. Tex. June 15, 2011), *rec. adopted as modified on other grounds*, 2011 WL 2938223 (N.D. Tex. July 20, 2011) (finding that 12.66 hours "spent reviewing and making notes on the record" were reasonable); *McNeil*, 2009 WL 1451707, at *3 (approving of 11.35 hours that counsel spent reviewing the administrative record); *Miller v. Apfel*, No. CIV.A. 300-CV-0107-M, 2001 WL 1142763, at *4 (N.D. Tex. Sept. 26, 2001) (declining to reduce from 24.10 to 12.5 the hours that counsel spent "reviewing the administrative record").

determine whether substantial evidence" supports the ALJ's decision, "one must understand and interpret the claimant's medical record, … [which] may consist of complex medical terminology, medical reports, progress notes, diagnoses, and psychiatric evaluations." *Valentin-Negron v. Comm'r of Soc. Sec.*, No. CIV. 11-1860 MEL, 2012 WL 5948341, at *2 (D.P.R. Nov. 28, 2012) (approving of a consultative session with a medical advisor because it "aid[ed] [the] attorney in mounting an informed and effective case"). Notably, the "facts" section of Plaintiff's opening brief contained nearly a dozen footnotes defining key medical terms and explaining their significance to the Court, indicating the utility of counsel's "medical research." (*See* doc. 19 at 3–6.)

Lastly, counsel also spent a portion of the 7 hours conducting legal research and drafting part of argument II of Plaintiff's opening brief regarding the "ALJ's failure to accommodate or properly evaluate [Plaintiff's] bowel accidents." (docs. 19 at 13–20; 27-2 at 2.) This argument assisted the Court in finding that the ALJ committed reversible error by failing to consider and incorporate any resulting limitations caused by Plaintiff's bowel incontinence in his RFC assessment. *See Hamblen v. Colvin*, No. 3:12-CV-2009-BH, 2013 WL 4858750, at *14 (N.D. Tex. Sept. 12, 2013). Given the thoroughness of Plaintiff's brief generally and his winning argument in particular, the 7 hours requested for September 18, 2012, are reasonable and will not be reduced.

### *2.    Work Performed on September 22 and 23, 2012*

The Commissioner claims the 11.9 hours counsel spent drafting "argument V" on September 22 and 23, 2012, are unreasonable because the argument "equated to less than two pages." (doc. 30 at 4.) She further contends that the time counsel spent "preparing the table of authorities and editing footnotes" is not compensable because those activities constitute "clerical tasks." (*Id.*)

Counsel spent the disputed 11.9 hours reviewing a psychological consultant's report, drafting

the introduction of the "argument" section of Plaintiff's opening brief, completing arguments IV and V, revising and streamlining the entire brief—including the footnotes, and verifying the "proper preparation" of the table of authorities. (doc. 27-2 at 3–4.) Plaintiff's successful summary judgment brief was 33 pages long and contained five issues for review. (*See* doc. 19.) The brief presented a comprehensive explanation of Plaintiff's physical ailments and their symptoms and made a thorough presentation of Plaintiff's legal arguments on appeal. "[I]t is well established that the most critical factor in determining an award of attorney's fees is the degree of success obtained by the victorious plaintiff[]." *Northwinds Abatement, Inc. v. Empl'rs. Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (internal quotations omitted); *see also Hensley*, 461 U.S. at 440 ("T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under" the EAJA."). In view of Plaintiff's success, the time requested to complete and revise his opening brief is reasonable. *See Northwinds*, 258 F.3d at 354. In addition, the "time spent proofreading, cite checking, and correcting" Plaintiff's brief, including the footnotes and table of authorities, "require[d] some legal skill and knowledge" that "could not generally be easily or competently performed by clerical staff." *See Leroux* v. Astrue, No. 3-10-CV-2634-M, 2012 WL 6757772, at *5 (N.D. Tex. Oct. 26, 2012), *rec. adopted*, 2013 WL 28577 (N.D. Tex. Jan. 2, 2013). Accordingly, no time will be deducted for the work performed on September 22 and 23, 2012.

In sum, considering all of the work performed, the 57.2 hours requested for litigating Plaintiff's case in federal court are reasonable and will not be reduced. *See Bentley*, 2011 WL 2923970, at *2 (awarding 57.5 hours "that counsel reasonably and necessarily expended in th[e] case"); *Sweat v. Barnhart*, No. 3-05-CV-0329-M, slip op. at 4 (N.D. Tex. Aug. 27, 2007) (approving of 66.1 hours that counsel "reasonably and necessarily expended . . . on the [claimant's] successful

appeal").

### III. CONCLUSION

*Plaintiff's Application for Attorney's Fees Under the Equal Access to Justice Act and Memorandum in Support Thereof*, filed December 10, 2013 (doc. 27), **GRANTED, part.** Plaintiff is awarded a total of $12,000.25 in attorney's fees as follows:

(1) 54.8 hours of attorney work for litigating Plaintiff's appeal in 2012 at an hourly rate of $178.64 ($9,789.47);

(2) 2.4 hours of attorney work for litigating the appeal in 2013 at an hourly rate of $185.78 ($445.87); and

(3) 9.5 hours for defending Plaintiff's EAJA attorney's fees application in 2013 at an hourly rate of $185.78 ($1,764.91).[15]

**SO ORDERED** this 17th day of April, 2014.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[15] Plaintiff requested, and the Commissioner did not object to "a supplemental award for the time reasonably required to respond to [the Commissioner's] objections." (doc. 27 at 6.) Under the EAJA, "fees incurred in litigating a fee application are compensable." *Leroux*, 2012 WL 6757772, at *2 (citing *Sandoval*, 86 F. Supp. 2d at 616); *see also Powell v. Commissioner*, 891 F.2d 1167, 1170–71 (5th Cir. 1990) (awarding the plaintiff 28.25 hours for attorney services rendered litigating his EAJA claim).